**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 15-23835-CIV-MIDDLEBROOKS/Brannon
(11-20338-CR-MIDDLEBROOKS)

MARIO PONCE RODRIGUEZ,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

**UNSEALED ORDER ADOPTING MAGISTRATE'S REPORT AND**
**RECOMMENDATION AND DENYING MOTION TO VACATE**

THIS CAUSE is before the Court on the Sealed Report and Recommendation ("Report") of Magistrate Judge Dave Lee Brannon (DE 199), recommending denial of Movant Mario Ponce Rodriguez's Motion to Vacate under 28 U.S.C. § 2255 and Addendum (DE 1, DE 7), and his Consolidated Supplement and Amendment(s) to Pending § 2255 Petition (DE 176), all seeking to vacate Movant's conviction in *United States v. Rodriguez Ponce,* Case No. 11-20338-CR-Middlebrooks. Mr. Ponce filed objections to the Report (DE 202), along with a series of exhibits (DE 203, DE 204, DE 205). The Government responded (DE 208), and Mr. Ponce replied (DE 213). I have carefully considered the parties' submissions and conducted a *de novo* review of the record. For the reasons set forth below, Judge Brannon's Report is adopted and Mr. Ponce's § 2255 Motion is denied.

**PROCEDURAL BACKGROUND**

On October 14, 2015, Mario Ponce Rodriguez filed a motion under 28 U.S.C. § 2255 to vacate his sentence. (DE 1). He raised two grounds:

1. A Sixth Amendment Claim for ineffective assistance of counsel arising from a conflict of interest;

2. A Fourteenth Amendment due process claim "due to the presentation of false collusive testimony."

The government responded to the motion on May 23, 2016. (DE 186). While responding on the merits, the government noted that Mr. Ponce had a pending appeal of the denial of his motion for a new trial based upon his allegation that government witnesses had colluded with each other in testifying against him at trial. The government argued that the "collusion" claim in the motion to vacate was a "rehashing" of the arguments made in the motion for new trial, which I denied and which was then on appeal. The government asked that Mr. Ponce's Motion to Vacate be held in abeyance pending resolution of the appeal. In reply, Mr. Ponce agreed that the § 2255 proceedings should be stayed. While noting that the Eleventh Circuit appeal did not include the ineffective assistance of counsel issue, Judge Brannon granted the stay, reasoning that "the commonality of the newly-discovered evidence issues in the appeal and in the § 2255 motion is such that from a jurisdictional and judicial economy standpoint, allowing the matter to first be resolved by the Eleventh Circuit is clearly warranted in this case." (DE 22).

In July 2017, the Eleventh Circuit affirmed the denial of a new trial. *United States v. Rodriguez*, 703 Fed. Appx. 784 (11th Cir. 2017). There were two aspects to its decision. My order denying the new trial dealt with Mr. Ponce's claim of newly-discovered evidence concerning John Stirling, a witness called by the defense to support Mr. Ponce's claim of witness collusion. In the Court of Appeals, however, Mr. Ponce's counsel, Richard Klugh, who also filed his § 2255 motion, submitted an affidavit as follows:

> Apart from John Stirling, and independent of the beliefs advanced by trial counsel as to the practices of "case jumping" by FDC inmates, undersigned counsel and a private investigator have met with three persons who were inmates at FDC, all of whom relate

2

> specific efforts by Jaime Alberta Marin Zamora to use false evidence to advance cooperation goals, and one of whom confirms Marin's use and resale of Ponce-related information obtained in Central America by a private investigator working for one of the government witnesses. The interviewed inmates, all of whom were cooperating or attempting to cooperate with the government, assert they conveyed to the government their claims as to Marin and they further confirm other misstatement made by Marin in relation to Venezuela-initiated drug trafficking through Central America. One inmate confirms the involvement of Orlando Fernandez Barrera (sic) in the purchase and use of intelligence about Ponce.

*See United States v. Ponce Rodriguez,* Case No. 11-CR-20338-DMM, Docket Entry 151 at p. 2.

In affirming denial of a new trial, the Eleventh Circuit stated:

> [A]s to the affidavit submitted by Ponce's counsel, the government stated it had investigated Ponce's claims of witness collusion and found them implausible. Even if Ponce had offered more fully substantiated evidence of witness collusion, that evidence would be merely cumulative and impeaching. The evidence would only go to the credibility of the government's witnesses, which Ponce had attacked on similar grounds at trial.

703 Fed. Appx. at 786.

## DISCUSSION

### A. Due Process/Witness Collusion Claim

In my view, the Eleventh Circuit's decision is dispositive of Mr. Ponce's due process and collusion of witness claims. "[W]hen an issue is once litigated and decided, that should be the end of the matter." *United States v. Smelting Ref. of Mining Co.,* 339 U.S. 186, 198 (1950). Nevertheless, I have reviewed Mr. Klugh's most recent April 22, 2019 affidavit as well as those of Bertulucci and Garcia and see nothing that would have changed the outcome at trial.

### B. Ineffective Assistance of Counsel/Conflict-of-Interest Claim

With respect to Claim One, the conflict of interest ineffectiveness claim, two points stand out. First, based on *McLain* and the decisions of other magistrates and district judges who had

3

considered the issue, Judge Garber correctly determined that no conflict existed where Mr. Ponce's counsel was being investigated in the Southern District of New York.[1] *See United States v. McLain,* 823 F. 2d 1457, 1463-1464 (11th Cir. 1987) (Explaining why lawyer's investigation of, and subsequent indictment by <u>same</u> U.S. Attorney's Office created incentive for him to save himself rather than client). *See also Taylor v. United States,* 985 F. 2d 844 (6th Cir. 1993); *United States v. Aiello,* 900 F. 2d 528 (2nd Cir. 1990).

Second, the record conclusively shows that Mr. Ponce was aware of the plea offer extended by the government and insisted upon going to trial. During a status conference before Magistrate Judge Dube, Mr. Ponce stated he was aware of the plea offer, that the joint sentencing recommendation of the parties would be 210 months, which was the low end of a guideline range of 210 to 262 months.

> QUESTION (by Mr. Diaz): And your decision still is that you want to go to trial?
>
> ANSWER (by Mr. Ponce): Yes.

(DE 178 at 27).

Mr. Ponce testified on his own behalf at trial and emphatically professed his innocence. I saw no indication he ever intended to change his plea.

### C. Objections to the Magistrate's Report

Turning to the objections to the Report and Recommendation, I note that there are 26 pages of "objections" to a 22-page Report. Most do not merit discussion. For example, Mr. Ponce objects that the Report in its recitation of the procedural history doesn't mention the Second Superseding

---

[11] There is a misstatement or typographical error on the bottom of page 13 of the Report and Recommendation. Mr. Diaz was investigated in the Southern District of New York but never indicted.

Indictment (Crim DE 28). While true, that makes no difference to the legal analysis contained in the Report.

Similarly, Objections 2, 3, and 4 are argumentative and irrelevant.

Objection 5 is denied; as set forth above, I find based upon the emails and colloquy before Judge Dube that Mr. Ponce was aware of and rejected the plea offer.

Objection 6 is simply argumentative.

Objection 7 is denied. Based upon my observation during trial I find Mr. Diaz zealously advocated on behalf of Mr. Ponce.

Objection 8 is denied for the same reason.

Objection 9 is denied. I find that Mr. Oliva's affidavit is unpersuasive and irrelevant in light of the Eleventh Circuit's decision affirming the denial of a new trial. Moreover, the claim that the government's cross-examination of John Stirling affected the outcome of Mr. Ponce's trial was directly addressed by my Order Denying New Trial, *United States v. Rodriguez,* 2015 U.S. Dist. LEXIS 186106, and the Eleventh Circuit's opinion affirming that Order, *United States v. Rodriguez,* 557 Fed. Appx. 930 (11th Cir. 2014).

Objection 10, the standard for a newly discovered evidence claim in the context of a new trial is set forth in *Lynn v. United States,* 365 F. 3d 1225, 1236-1237 (11th Cir. 2004).

Objection 11 is denied.

Objection 12 is denied. For the reasons stated above I agree no actual conflict was established.

Objection 14 is denied.

Objection 15 is denied. The transcript of the trial contains extensive and effective cross examination.

Objection 16. The problem with Mr. Ponce's testimony was its credibility, not lack of preparation. His testimony that he was simply a rancher and farmer was not believable in light of the evidence.

Objection 17 is denied. Mr. Ponce's after the fact affidavit is disproved by the status hearing before Magistrate Judge Dube.

Objection 18 is denied.

Objection 13 is the only one which merits more substantive discussion. The complaint in Objection 13 -- that the Report and Recommendation did not address the failure to call DEA expert Michael Levine -- shows how far this proceeding traveled from its original filing and how extreme the second guessing of counsel became. On January 30, 2008, almost six years after the trial in this case, post-conviction counsel submitted the affidavit of an ex-DEA agent, Michael Levine. According to his website, in addition to his work as a trial consultant, Mr. Levine is an author of several books including "The Big White Lie, How the CIA Sabotaged the American Drug War," articles including "I Volunteer to Kidnap Oliver North" and "King Rat: The American Justice System – Where the Rat is King" as well as the host of a New York radio program, "The Expert Witness Show." In his affidavit he modestly opines that after his "preliminary review… I can conclude based upon my extensive experience as summarized herein, that Mr. Ponce's predecessor defense counsel could not have provided effective representation at trial in a complex trafficking case of this magnitude without offering the opinion of an expert witness such as myself…" (DE 29 at 9).

I find that trial counsel cannot be faulted for failing to call Mr. Levine. I question how his testimony would have been helpful on either of the issues proffered by post-conviction counsel. As the Eleventh Circuit found on direct appeal, the evidence Mr. Ponce knew the drugs he was

transporting through Central America would ultimately be imported into the United States was supported by both direct and circumstantial evidence. *See United States v. Rodriguez,* 557 Fed. Appx. 930 (11th Cir. 2014). Mr. Ponce's defense was that he was wrongly accused and had no involvement in the movement of drugs. It is hard to imagine Mr. Levine could credibly argue that large scale shipments of drugs through Honduras, Guatemala, and Mexico paid for in U.S. dollars were destined elsewhere. And counsel cannot be faulted for not wanting that issue to be a focus of the defense.

I question whether Mr. Levine's opinions about inmates "jumping on Ponce's trial bus" would be admissible as expert testimony. While Mr. Levine seems to have had a distinguished career at the DEA thirty years ago, I likely would have agreed with the views expressed by a Washington trial judge in excluding Mr. Levine's "very loquacious findings":

> I have no doubt that Mr. Levine is a former law enforcement officer in drug enforcement, a current TV (television) and movie consultant, TV and movie personality and apparently some experience as an expert witness in drug enforcement, money laundering and undercover operations, could no doubt entertain and inform this jury, as he's apparently done on Geraldo Rivero and Donahue shows in the past, but in the final analysis, what he does is simply, again, invade the province of this jury . . .

*State v. Rafay,* 285 P. 3d 83 (Ct. App. Wash. 2012). *See also Bazile v. City of New York,* 215 F. Supp. 2d 354 (S.D.NY 2002) (Excluding Mr. Levine's testimony "simply proffering his opinions about the relative credibility of the testimony of plaintiff and the defendants, a determination that is left for the trier of fact and not for a supposed expert, even one better endowed than Levine with skills relevant to that task.").

Objection 13 is denied. I find based upon my observations at trial and my review of the transcript that counsel's cross examination was vigorous. Impeachment of those witnesses was not limited to the issue of access to each other. Six months after the Levine Affidavit, on June 20,

2018, post-conviction counsel filed the affidavit of Donald Bierman who was retained to render an expert opinion. Mr. Bierman enjoys a good reputation, but his affidavit is not only unpersuasive but disappointing. With nothing but his unsupported conclusion, he details alleged failings of Mr. Ponce's trial counsel and attributes them all to the investigation of counsel by the southern District of New York. He ignores circuit precedent and the consistent rulings by district judges and magistrates within the district as to what constitutes a conflict. His affidavit lacks substance. As an example, he claims that trial counsel could not vigorously cross-examine Nestor Tarazona because Tarazona was indicted in the Southern District of New York. However, Tarazona was actually indicted in the Eastern District of New York. (DE 77 at 4). Mr. Bierman's long after-the-fact arm chair analysis is far from a demonstration of ineffectiveness.

### D. Sealing

Many of the filings in this protracted post-conviction case were submitted under seal, with either Judge Brannon's approval or mine. The basis for sealing was the potential for reputational harm in connection with the allegations concerning trial counsel's purported conflict of interest. Having conducted this *de novo* review of the record, I have reconsidered the appropriateness of continuing to keep these filings sealed. For the reasons set forth below, this Order shall be unsealed, and I will direct the Clerk to unseal all of the sealed filings in this record.

It is clearly established that the general public possesses a common-law right to access judicial records and that judicial records are presumed to be public documents. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *see also Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). Judicial records are presumed to be public documents because "[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *See Brown v. Advantage Eng'g, Inc.*,

960 F.2d 1013, 1016 (11th Cir. 1992). Pursuant to the Local Rules of the Southern District of Florida, "[u]nless otherwise provided by law, Court rule or Court order, proceedings in the United States District Court are public and Court filings are matters of public record." S.D. Fla. L. R. 5.4(a).

"The common law right of access may be overcome by a showing of good cause, which requires 'balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential.'" *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (quoting *Chicago Tribune*, 263 F.3d at 1309). When determining whether good cause to seal exists, a district court must first look to "the nature and the character of the information in question." *Id*. (quoting *Chicago Tribune*, 263 F.3d at 1315). When balancing the public's common-law right to access judicial records "against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Id*. (citing *In re Alexander Grant & Co. Litig*., 820 F.2d 352, 356 (11th Cir. 1987)).

I have considered the potential for reputational harm which previously justified treating prior court filings as confidential. In balancing that risk against the importance of the public's right of access, I find that sealing is no longer warranted. I recognize that this decision deviates from the manner in which I previously weighed these same considerations in granting prior motions to seal. However I am now approaching this issue with a more informed understanding of the matters contained in the record and with this enhanced perspective, I am convinced that a different outcome

is appropriate. Indeed, it is my impression that the lack of meaningful public access to court filings contributed to a propensity to make overly speculative and unsupported allegations about the behavior and motivations of the lawyers involved in the underlying criminal trial. The secrecy seems to have emboldened some to make accusations that bordered on outlandish. I suspect that different choices may have been made in the approach to litigating this case were it not for the cover provided by the sealing orders. In sum, I find that the need for transparency in this criminal post-conviction proceeding outweighs the individual interests in keeping the filings in this matter sealed.

### E. Evidentiary Hearing.

The files and records of this case conclusively show that Mr. Ponce is entitled to no relief. No evidentiary hearing is necessary.

### F. Certificate of Appealability

There has been no "substantial showing of the denial of a constitutional right" sufficient to support the issuance of a Certificate of Appealability. *See* 28 U.S.C. § 2253. Reasonable jurists would not find this assessment of constitutional claims debatable or wrong. Accordingly, a certificate of appealability is denied.

## CONCLUSION

Upon independent *de novo* review of the record and appellate decisions, the Report and Recommendation of the Magistrate Judge, and Mr. Ponce's objections and all submissions of the parties related thereto, it is **ORDERED AND ADJUDGED** that:

1. Mr. Ponce's objections to the Magistrate Judge's Report and Recommendation (DE 202) are **OVERRULED**.

2. The Report and Recommendation (DE 199) is **ADOPTED**, as supplemented by my own findings and conclusions as set forth in this Order, and based in part upon my observations at trial.

3. Mr. Ponce's Motion to Vacate under 28 U.S.C. § 2255 (DE 1), Addendum (DE 7), and Consolidated Supplement and Amendment(s) thereto (DE 176) are **DENIED**.

4. Final Judgment is hereby **ENTERED** in favor of the United States.

5. A Certificate of Appealability is **DENIED**.

6. The Clerk of Court shall **UNSEAL** all filings previously submitted under seal in this case.

7. The Clerk of the Court shall **CLOSE THIS CASE.**

8. All pending motions are **DENIED AS MOOT**.

**SIGNED** in Chambers in West Palm Beach, Florida, this 17th day of March, 2021.

Donald M. Middlebrooks
United States District Judge

cc: Magistrate Judge Dave Lee Brannon
Counsel of Record